908 F.2d 973
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Dean R. KIBBE, Plaintiff-Appellant,
v.
Patricia A. HUMPHREY; the Thomas Edison Inn; the City of
Port Huron; and the County of St. Clair,
Defendants-Appellees.
 Nos. 89-1456, 89-1720.
 United States Court of Appeals, Sixth Circuit.
 July 24, 1990.
 
 Before NATHANIEL R. JONES and DAVID A NELSON, Circuit Judges, and BAILEY BROWN, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 This is a somewhat unusual civil rights action, brought under 42 U.S.C. Sec. 1983 against (a) the plaintiff's former landlady, (b) the promoters of a project to build a hotel on a municipally-owned tract of land in the City of Port Huron, Michigan, (c) the city itself, and (d) the county in which the city is located.
 
 
 2
 The case arises out of an alleged conspiracy among the defendants unlawfully to evict the plaintiff and his dogs from an apartment they occupied near the site of the proposed hotel, and to prevent the plaintiff from placing on the ballot at a municipal election an alternative proposal for use of the hotel site. In addition to alleging violations of local law, the complaint asserts that the defendants violated the plaintiff's due process and equal protection rights under the United States Constitution.
 
 
 3
 The district court dismissed the complaint for failure to state a federal claim. The plaintiff then filed interrogatories and moved for an order compelling the defendants to answer them. The court denied the motion. The plaintiff has filed separate notices of appeal with respect to the dismissal of the complaint and the denial of the motion to compel.
 
 
 4
 We shall affirm the judgment dismissing the complaint, thereby mooting the second appeal.
 
 
 5
 * In 1985, according to his complaint, plaintiff Dean R. Kibbe lived in an apartment at 1934 Stone Street, Port Huron, Michigan. The apartment is said to have been located in a slum surrounding a publicly-owned parcel called the Peerless site. At a city council meeting held in January of 1985, the complaint avers, the president of defendant Thomas Edison Inn submitted a proposal to build a hotel on the Peerless site. Mr. Kibbe subsequently submitted a proposal under which the site would be used instead for a non-profit American Indian cultural center and park. The hotel proposal was placed on the ballot, but Mr. Kibbe's proposal was not. We gather that the hotel was eventually built.
 
 
 6
 In April of 1985 Mr. Kibbe filed a civil rights action in federal court, alleging that his cultural center proposal had been kept off the ballot illegally. We are told that the action was dismissed in August of 1985 on standing and ripeness grounds.
 
 
 7
 At about the time of the dismissal of his lawsuit, Mr. Kibbe says, he began withholding the rent on his apartment because his landlady, defendant Patricia Humphrey, had allowed it to become infested with mice. The landlady--who, like the Thomas Edison Inn, is apparently supposed to be a member of a class of "comparatively wealthy landowners" comprising a "quasi-government"--brought suit in state court and obtained a judgment against Mr. Kibbe in November. Mr. Kibbe claims he reached an oral settlement with the landlady on December 3, 1985, but the following day, notwithstanding the settlement and notwithstanding alleged illegalities in the state court proceedings, a phalanx of city and county officials evicted him from his apartment.
 
 
 8
 The eviction supposedly left Mr. Kibbe homeless and made it necessary for him and the dogs he had adopted to live outdoors in the cold. Mr. Kibbe survived, but one of the dogs did not:
 
 
 9
 "Baby, a registered American Pit Bull Terrier Bitch, second to no dog of any breed that has ever lived, and literally priceless as an unsurpassed specimen of the breed, potential breeder, and courageous, protective, loving companion, and adopted daughter of Plaintiff Dean R. Kibbe, died on January 20, 1986, as a result of Plaintiff being forced to eventually live outdoors in a remote area outside of town as a result of the unlawful eviction carried out by the defendants...."*
 
 
 10
 Mr. Kibbe contends, among other things, that the defendants conspired to evict him from his apartment in retaliation for his civil rights suit and to make it harder for him to pursue an appeal in that case. (Despite the dismissal of his original case, Mr. Kibbe asserts, the pendency of an appeal was interfering with the financing of the hotel project; the landlady allegedly hoped that construction of the hotel would result in a large increase in the value of her property.) Mr. Kibbe also maintains that although he had appealed to the Michigan Court of Appeals from the judgment entered by the state court in November of 1985, the loss of his home prevented him from seeking further redress in the state court system. "[H]omelessness," he explains, "makes it difficult, if not impossible, for a tenant to pursue his rights...."
 
 
 11
 The present lawsuit was begun in federal district court on January 23, 1987, pursuant to an order allowing Mr. Kibbe to proceed in forma pauperis. He promptly moved to disqualify District Judge James Harvey, whereupon a magistrate entered an order appointing counsel for Mr. Kibbe. The motion to disqualify was denied, which led to the first of several unsuccessful appeals in this case. (See our order of April 16, 1987, in Case No. 87-1277. Another unsuccessful appeal dealt with the withdrawal of one of Mr. Kibbe's court-appointed lawyers. Case No. 88-1497, June 13, 1988.)
 
 
 12
 The defendant county moved for judgment on the pleadings, and the remaining defendants all filed answers to the complaint. The court eventually granted the county's motion, dismissing the county from the suit.
 
 
 13
 In August of 1988, following a pretrial conference, Mr. Kibbe was allowed to file an amended complaint. Although Mr. Kibbe had been represented off and on by various court-appointed lawyers, each of whom had been allowed to withdraw, the amended complaint, like its predecessor, appears to be the work of an articulate and imaginative layman, albeit a layman who has read some law or picked the brain of someone who has read some law.
 
 
 14
 Mr. Kibbe asserts in his brief that St. Clair County was brought back into the case with the filing of the amended complaint, but the record does not so indicate. The county made no further filings. The defendant landlady, Ms. Humphrey, promptly answered the amended complaint. The remaining two defendants did not file timely answers, and in October of 1988 Mr. Kibbe moved for a default judgment. The answers were filed five days later. Ms. Humphrey subsequently moved for summary judgment, but the district court found it unnecessary to rule on that motion.
 
 
 15
 In March of 1989 the district court issued the memorandum opinion and order from which the first of the present appeals has been taken. Noting that the answers of the city and the Thomas Edison Inn had been filed late, the court directed the clerk to enter a default against those defendants. The court declined to enter a default judgment, however, holding that the federal claims Mr. Kibbe had sought to assert were deficient as a matter of law. Concluding that it would be inappropriate to retain pendant jurisdiction over any state-law claims, the court dismissed the complaint in its entirety. Mr. Kibbe then filed his interrogatories, with the results described at the outset of this opinion.
 
 II
 
 16
 Whether or not the district court was correct in ordering a default against the two defendants that were tardy in answering Mr. Kibbe's amended complaint, there was clearly no error in refusing to enter a default judgment against them. Both defendants were active participants in the lawsuit, they had what the court recognized as a meritorious defense, and a default judgment would have been unthinkable. Cf. Berthelsen v. Kane, --- F.2d ---- (6th Cir. July 6, 1990), where we directed that a default and default judgment be set aside notwithstanding that the defendant against whom they were entered, unlike the defendants here, had willfully evaded service of process and had made no attempt to defend the action.
 
 
 17
 As to the legal sufficiency of his claim, the first argument advanced by Mr. Kibbe in his brief on appeal is that because his leasehold interest in the apartment at 1934 Stone Street had not been lawfully extinguished at the time of the eviction, the eviction deprived him of his property without due process of law. The argument is not persuasive. Even if the state trial judge was a party to the alleged conspiracy, as Mr. Kibbe asserts, the Michigan Court of Appeals unquestionably had jurisdiction to review the writ of restitution pursuant to which the city and county officials carried out the eviction.
 
 
 18
 Mr. Kibbe contends that "[p]olicy in state courts in St. Clair County prevents a fair trial and/or effective appeal for [a] tenant in a landlord/tenant suit," but the pleadings contain no factual allegations to support this assertion. Even if the state trial court acted unlawfully in this instance, we may not assume that Mr. Kibbe was without an effective remedy in the state court of appeals--and as a legal matter, the effectiveness of his state remedy does not turn on whether Mr. Kibbe had a decent place to live while pursuing it.
 
 
 19
 Mr. Kibbe did not have to rely on the landlady's alleged oral promise of forebearance when there was a signed eviction order pending against him; he could have begun an original action in the state court of appeals to block the eviction. See Mich.Comp.Laws Sec. 600.4401. He also had a right of appeal, of course, and the state did not deprive Mr. Kibbe of his property without due process of law if an adequate post-deprivation remedy was available. See Parratt v. Taylor, 451 U.S. 527, 543 (1981). Mr. Kibbe's due process argument simply cannot carry the day for him.
 
 
 20
 Mr. Kibbe also maintains that his equal protection and due process rights were denied him because he "was not even allowed to finish presentation of his [cultural center] proposal at the city council meeting...." (We shall assume that Mr. Kibbe is complaining here not only of his treatment at the city council meeting, but also of the failure to put his cultural center proposal on the ballot.) But the rejection of Mr. Kibbe's proposal for the city to allow its Peerless site to be turned into a cultural center did not deprive Mr. Kibbe of life, liberty or property, with or without due process of law--and the claim of a denial of equal protection likewise has no support that we can discern in Mr. Kibbe's factual allegations. The mere circumstance that one proposal was placed on the ballot while the other was not hardly suggests a violation of the equal protection clause.
 
 
 21
 Mr. Kibbe's remaining contentions are without merit. The district court acted properly in dismissing the purported federal claims, and that being so, the dismissal of any state law claims was also proper. See Carnegie-Mellon University v. Cohill, 484 U.S. 343 (1988).
 
 
 22
 AFFIRMED.
 
 
 
 *
 The complaint asks for the following relief in respect of the loss of the dog:
 "(1) Compensatory damages in an amount at least greater than all the money in the world.
 (2) Punitive damages in an amount to be determined by the jury.
 (3) That the defendants burn in hell forever."
 The relief sought for the blocking of the cultural center is more modest:
 "(1) Compensatory damages in an amount of at least $24 (twenty-four dollars) in beads and trinkets.
 (2) That the Thomas Edison Inn be torn down at the expense of the defendants.
 (3) Punitive damages in an amount to be determined by the jury."